## Case No. 272.

### AMBLER v. CHOUTEAU et al.

[3 Cent. Law. J. (1876) 333.]

Circuit Court, E. D. Missouri.[1]

EQUITY PLEADING—MULTIFARIOUSNESS — JOINDER OF PARTIES—PARTNERSHIP.

[1. A bill by an inventor, alleging a fraudulent sale of his patent rights. which does not clearly show whether the relief prayed for is that the sale be canceled, and the patent restored, or that the sale be confirmed, and the buyer forced to account for the profits, is bad on demurrer.]

[See note at end of case.]

[2. Where a patent is issued to a partnership, one partner cannot maintain a bill against an alleged fraudulent purchaser of the invention without making the other partner a party to the record, although such other partner shared in the alleged fraud. Ambler v. Whipple, 20 Wall. (87 U. S.) 546, distinguished.]

[See note at end of case.]

[In equity. Bill by Augustine I. Ambler against Charles P. Chouteau, the Missouri Liquid Fuel & Illuminating Company, and others, alleging a fraudulent sale of complainant's invention to respondents. Heard on demurrer to the bill. Demurrer sustained. An appeal was subsequently taken to the supreme court, where this decision was affirmed. 107 U. S. 586, 1 Sup. Ct. 556.]

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge, delivered an oral opinion, as follows, (TREAT, District Judge, concurring:)

[1][Affirmed by supreme court in 107 U. S. 586, 1 Sup. Ct. 556.]

In this case there is a demurrer to the bill of complaint. The case is a very important one, if it is ever brought to a hearing on all the charges made in the bill. There is a demurrer on various grounds. One is, that the individual corporators, or certain individual corporators, have been joined as defendants, with the corporation, the "Missouri Liquid Fuel & Illuminating Co." Another is that it appears from the bill, that there was an agreement between the plaintiff, Ambler, and one Whipple, giving the latter the entire control of the patent, the complete, jus disponendi, and that what is charged as a fraud here, is simply acts that Whipple, by virtue of this contract, had authority to do, namely, to control and sell the patent in which the plaintiff claims an interest. Another ground is that, although the bill is based upon fraud, and is profuse in general charges of fraud, nevertheless the facts stated do not show fraud in the defendants. Another ground is that Whipple & Dickerson are necessary parties to the relief sought in this bill, and are not made parties, either complainant or respondents.

In 1869 the government of the United States, on the 13th of July, granted a patent, known as 92,687, jointly to the complainant, Ambler, and to one Whipple. It seems that Ambler, the complainant here, is the inventor, or claims to be the inventor, of the process mentioned in the patent, which is claimed to be very valuable, and that Whipple was to be the business manager of the concern. They formed a partnership, and their contract provides that Ambler shall go on and perfect his invention; shall get a patent; that all the improvements shall inure to their joint benefit; that Ambler shall keep his hands off when they get a patent, in the way of disposing of it to make it valuable; and, finally, that he shall confine himself to the work of invention, and that Whipple shall do the work of selling, to make it realize money gains. Accordingly that arrangement was made. That is the substance of the contract. Whipple had authority to sell and dispose of it, and was to account to Ambler for one-half the gains. According to the judgment of the supreme court of the United States, which has had before them a controversy between Ambler and Whipple, this man Whipple, believing this to be a very valuable patent, immediately conceived the idea of swindling Ambler out of it; and it does not stand alone in the history of inventions, that the man whose cunning, whose days and nights, are given to the perfecting of the patent, is often swindled out of the proceeds of it, by those more cunning than himself in the ways of the world. According to the opinion of the supreme court of the United States, Whipple, as I have said, conceiving this to be a very valuable patent, immediately set to work by a confederacy with

one Dickerson to swindle Ambler out of it. They pirated from him an improvement on this invention, went to the patent office, made due application, and caused two patents to be issued, one 95,665, the other 102,-662, although they were improvements simply, on Ambler's original patent. They caused those patents to be issued to Whipple and Dickerson, and not to Ambler, who was ignored in this transaction. Afterwards other proceedings were had—but not until after the transactions here in question took place—whereby another patent was issued to the plaintiff, as the sole and first inventor of the same improvements, which were embraced in the patent surreptitiously obtained by Whipple and Dickerson. Now, while Whipple and Dickerson hold the patents, which were procured, undoubtedly in fraud of the plaintiff's rights here, but while the original contract between Whipple and Ambler was in force, by which these patents were to have been turned into that partnership arrangement, Whipple and Dickerson come out west, and make a sale of this patent-right to Blunt and Insley, for thirty-five or seventy thousand dollars. Blunt and Insley come here and organize a company, on a grand scale of a quarter of a million, half a million, or a million dollars; sell out this patent to a company here, which is incorporated under the laws of Missouri, and commence operations. The supreme court of the United States, in the case between Ambler and Whipple, which was brought in January, 1870, and resulted in a decree in the supreme court of the United States in November, 1874, [Ambler v. Whipple, 20 Wall. (87 U. S.) 546; 23 Wall. (90 U. S.) 278,] this litigation drawing its slow length along in the District of Columbia for four years, or nearly five, decided, that this was a co-partnership arrangement, originally between Ambler and Whipple; that all improvements made, and all subsequent patents issued, fell into this partnership arrangement; that the patents issued to Whipple and Dickerson were issued in fraud of the rights of the plaintiff; and that to one-half of all the gains under those patents Ambler was entitled.

That was not a bill, as the supreme court remarked, to dissolve the partnership between Ambler and Whipple, but a bill to account; and the supreme court held that there should be an accounting, between Ambler and Whipple, as to all gains which had been made under all these patents, one-half of which belonged to the Whipple side; it did not make any difference to the plaintiff whether to Whipple alone or to him and Dickerson. The supreme court, in deciding that, although they did not say anything about it, must have held, that a bill between partners for an account, would lie pending a partnership, for they say the partnership is not dissolved; they, therefore, must have

held, if their attention was called to it, that a bill would lie pending the existence of a partnership, by one partner against another, for an accounting, and to restrain improper conduct, notwithstanding there was no dissolution, and no prayer for dissolution; in regard to which there has been a great deal of controversy. Lord Eldon, according to my recollection, has stated, several times, that such a bill would not lie, but the American courts have sometimes held otherwise, and perhaps with very good reason. Ordinarily if partners can not agree and there is a loss of confidence between them, the partnership had better be dissolved; but we can imagine a case where it would be, perhaps, to the interest of the parties to have an accounting, notwithstanding they do not want a dissolution. But no matter about that; the supreme court decided that there should be an accounting under all these patents and that Mr. Ambler was entitled to one-half of the gains, which had been made out of all of them, ordered an accounting accordingly, and remanded the case to the lower court. Such proceedings have been had; there has been an accounting between them, and Whipple has been found indebted to Ambler in some six or seven hundred thousand dollars, so stated.

Now, in this state of the case, Ambler comes into this court, exhibits his bill in his own name, not joining Whipple, not alleging that this partnership between him and Whipple is dissolved, but rather alleging that it is not dissolved; not alleging any fact showing that he has succeeded to the general rights of the firm composed of himself and Whipple; not alleging any dissolution; not alleging any succession to the rights of the two; not making Mr. Whipple a party either complainant or defendant, and exhibits this bill against the Missouri Liquid Fuel and Illuminating Co., which was organized here, and against certain of its stockholders or directors, and wants relief.

The bill is defective for two reasons. It is multifarious, but that is easily amended. It undertakes to join various matters which, in any event, this corporation has no concern in. It is defective, for instance, in this: that it is difficult to ascertain from it whether it is a bill on the part of Mr. Ambler, seeking to obtain those rights which were sold to Insley and Blunt, who are alleged to be mere men—Friday, stool-pigeons, or tools, for the company here; whether Ambler wants back his franchises, his rights which have been sold to them, on the ground of a fraudulent sale, and wants his patent to be restored and have that sale by Whipple cancelled; or whether he wants to confirm it and get the proceeds. He must do one thing or the other. He can not blow hot and cold. He can not say, "There is fraud here, and therefore I want my patent back," and at the same time say, "I waive the fraud and want the proceeds." He has to elect what he will do.

in this matter. I make these suggestions so that in case the bill is amended, it may state specifically what he wants. But the chief difficulty that the court perceives in the bill is this: that unless it can be alleged here that this partnership it at an end, and that Ambler has succeeded to the rights of the partners, certainly, in a proceeding in which his co-partner is not made a party, either complainant with him, or a party on the record as defendant, there can be no relief. Suppose he wants to have this arrangement set aside on the ground of fraud—a fraud committed by his co-partner, Mr. Whipple; to such a bill Mr. Whipple is a necessary party. Suppose he is willing to waive the fraud, and say, "I want to compel this company to account;" if, as it is said, they have not paid up fully for it, then if that partnership is still existing he can not bring his individual action himself; he must say that he has succeeded in some way to the rights of the two. That he has not done, and for that reason we must sustain this demurrer.

An argument was made here to sustain the right of Mr. Ambler to bring this bill in his own name, based on certain observations of the supreme court. In this suit of Ambler against Whipple and Dickerson, the supreme court held that, in this partnership arrangement, Ambler was entitled to one-half as against Whipple, and, they said, also as against Dickerson, because he had knowingly connected himself with Whipple, in the perpetration of the fraud. That has misled, as I think, the counsel for the plaintiff, into thinking that everybody against whom they can charge fraud, can be sued by Ambler in the same way that Ambler could sue, and did sue, his co-partner for an accounting; besides that, Dickerson in that suit, was one of the necessary parties, because two of the patents, which were issued, were issued to him and Whipple. To apply that observation of the court in respect to Dickerson, in that case would be to virtually overthrow all of the law applicable to partnership in this land.

The entry will be, "Demurrer sustained." The plaintiff can consider whether he can make a case, in view of my observations, so as to avoid these objections. He will have leave to amend, if he desires it, by June rules.

TREAT, District Judge, concurs in what I have said, and in the conclusion reached.

Ordered accordingly.

[NOTE. On appeal to the supreme court, this decision was affirmed. Mr. Chief Justice Waite, in delivering the opinion of the court, said: "The prayer is that the defendants may be enjoined 'from proceeding further with any dealings with the said partnership and trust property aforesaid,' and 'that the damages to your orator for the wrong and injury done in this behalf may be duly considered, and that an account be taken thereof before the master, * * * and that your orator, upon the final hearing, be allowed, adjudged, and decreed damages therefor.' This is the substance of all there is material in the mass of irrelevant matter that incumbers the record, and fills the voluminous argument filed by the appellant in his own behalf. Upon full consideration, we have no hesitation in saying that it presents no case for such relief in equity as is asked. If, as is more than once distinctly alleged, the object of the suit is to recover damages for an unlawful and fraudulent conspiracy to cheat Ambler out of his interest in the original invention which is the subject-matter of the controversy, the remedy is clearly at law, and not in equity. If an account of profits is wanted, and an injunction against the further use of the patented inventions, under the transfers from Whipple & Dickerson, then the suit should have been against the Missouri corporation in its corporate capacity, and not against a part only of its stockholders and directors individually. If the object is to charge these defendants for the profits made by Whipple through his breach of trust, then he is a necessary party, and nothing can be done in his absence. In any event, these defendants are but purchasers from Whipple of specific interests in the property which he held in trust for himself and Ambler. While the allegations of fraud in their general terms are as broad as language can make them, specifically they are confined by other allegations to the use of the patented invention in Missouri by the Missouri corporation, of which the defendants are stockholders and directors. It is not in any manner alleged or claimed that the defendants have profited by what Whipple has done, except through the title acquired by the conveyance to Blunt & Insley, and from them, with the consent of Whipple & Dickerson, the faithless trustees, to the corporation. No effort is made to set aside these conveyances. It is conceded that Blunt & Insley actually paid Whipple & Dickerson $70,000 for the assignments which were made, and it is fairly to be inferred that in the accounting had under the decree of this court in Ambler v. Whipple, 20 Wall. (87 U. S.) 559, Whipple has been charged with the proceeds of this sale. But, whether that be so or not, no case has been made by the loose and general allegations in the bill for relief against these defendants." Ambler v. Choteau, 107 U. S. 586, 1 Sup. Ct. 556.]